Complainant’s bill alleges, in substance, that he gave to "William Tyler, and solely for the accommodation of the latter, his promissory note, dated 26th October, 1875, and payable sixty days after date, with interest at the rate of eight per cent, per annum, at the bank of Offley & Co., in Washington, D. C.; that said note was given with the understanding that the payee, on negotiating it, should secure it by a good and sufficient collateral; that said payee negotiated the note to defendant, pledging as security for its payment a coupon bond of the Orange and Alexandria Railroad Company for the sum of five hundred dollars, with coupons to and including 1st March, 1875, and that the value of this bond was more than sufficient to satisfy the note; that when the note was about to mature, the defendant, still holding said collateral, agreed to give complainant time; that complainant gave defendant his note for two hundred and fifty dollars, dated 28th December, 1875, and payable thirty days after date, with interest at eight per cent, per annum, at the office of Riggs & Co., and took up the original note; that subsequently the defendant told complainant that if he would pay said renewal note and get an order for said bond from William Tyler, he would deliver said collateral to complainant; that complainant procured such order, and offered defendant the money to take up the note upon the surrender of the bond, bnt defendant refused to surrender the same, and that complainant is still ready and willing to pay said note upon the delivery of the bond; that, defendant has instituted on the law side of this court, in case number 16,328 of the law docket, a suit against complainant upon the said note. Complainant therefore asks for an injunction against said action at law, and for the surrender of the said collateral, and prays that defendant shall answer. Defendant’s oath is not waived.
*346 Defendant’s answer denies all knowledge that said original note was given for accommodation, or was given with the alleged understanding as to collateral security, and therefore denies the fact; denies that at the time said original note matured or was renewed, he held said bond as collateral for the same; and alleges that on 15th November, 1875, long before maturity of the original note, said William Tyler had executed and delivered to him an assignment and agreement, whereby the said bond, with other securities, were pledged to secure the endorsement of said William Tyler on certain notes described in the agreement and held by defendant; that thereby the said bond was transferred, as collateral security, from the particular note described in the bill of complaint to the liabilities described in the assignment. He denies that he had, at the time of said transfer, any notice or knowledge that said original note was claimed by complainant to be, or was in fact, an accommodation note; and alleges, on the contrary, that he "was informed, when he took said note, and believed the fact to be, that it -was given to payee in satisfaction of a debt due from complainant. He denies that he ever told complainant that he would deliver said bond to him on payment of said renewal note and presentation of an order for it from William Tyler, and denies that such order was procured by complainant with any such understanding. He denies that complainant tendered him the money to take up said note, or informed defendant that he had an order for said bond; but admits that complainant said he was ready to pay said note on receiving said bond, and that defendant refused to surrender the same. He admits the institution of the action at law, and denies specifically each allegation of fraud.
The bill and auswer were both under oath.
It will be observed from this statement of the pleadings, that the complainant alleges that he became the maker of the note in question for the accommodation of William Tyler, his brother, and be testifies as a witness to the same facts. The defendant denies this in his answer, and in his testi *347 mony he swears that William Tyler came to his office with the note, and stated that his brother, W. Bowie Tyler, had given it to him.in payment of the last installment which he owed him for some property which he had purchased from him, William Tyler. It is also clear, from the evidence in the case, that the defendant. Busey had no notice or knowledge that complainant was an accommodation maker until after the note was due. The allegation in the hill, that the note was given to William Tyler by the complainant with the understanding that the payee, on negotiating it, should secure it by good and sufficient collateral, may also be accepted as a fact in the case. The answer, however, denies all notice or knowledge of the alleged understanding as to collateral security; and Busey, in his testimony, swears positively that when he took said note he told William Tyler that he would require security, and that the latter then left with him a $500 Orange and Alexandria Railroad bond as collateral security, and that he made a memorandum on the margin of the note that it was so secured. He also swears that William Tyler said nothing to him about any arrangement between himself and his brother in relation to the bond when it was so deposited at the time he bought the note.
Another circumstance in the ease relates to the assignment set up in the answer. This assignment was executed on the 15th November, 1875. The note was not due till the 28th of December following. Busey testifies that he held certain notes which he had discounted for William Tyler; that he became persuaded that some of these notes were not genuine, and that he mentioned this to William Tyler, who then promised to make this assignment in order to make Busey entirely secure; that he knew the note of W. Bowie Tyler was genuine, and that he supposed William Tyler was the owner of the bond, and that he got it from him as his own property. There appears to be no doubt but that it was his own personal property. The assignment in question embraced this bond as collateral security for other debts. He *348 also states that he sold the bond by virtue of such assignment, and applied the proceeds to the payment of the notes mentioned in the assignment, aud which were not paid at maturity. It appears, from his answer and his testimony, that the assignment was made, and the proceeds of the bond applied to other liabilities several weeks before the maturity of complainant’s note, and before Busei had notice that complainant 'was an accommodation maker thereon.
Another fact remains to be stated: the note was renewed, complainant paying the interest and giving a new note for the same amount, payable in thirty days. It was about this time that Busey is shown to have acquired a knowledge that complainant was an accommodation maker, and after he had sold the bond in question and applied the proceeds as already mentioned. When complainant called upon Busey with the money to take up the note given in renewal, and having an order from William Tyler for the bond, the defendant refused to surrender the bond, claiming it under the aforesaid assignment. These are all the facts material to be considered.
On the hearing below, the special term decreed a perpetual injunction in the action at law, and required the proceeds of the sale of the bond to be first applied to the payment of the note of W. Bowie Tyler. The cause is here upon an appeal from this decree.
At the conclusion of the argument, all the justices who heard the case were of opinion that the decree below ought to be reversed, mainly on the ground that upon the face of the note the complainant appeared as the maker and debtor and William Tyler as the payee and creditor, and that the note itself certified this relation of responsibility among the parties to it. The contract obligations of parties to negotiable paper are established to be, that a person makes a note because he owes the debt to the payee and endorser, and no one is under any stress to deal with it upon any other presumption. In the absence of any notice to Busey, *349 he was at liberty to infer this relation of the parties upon the paper when he bought it from William Tyler.
William D. Cassin, for complainant.
James Saoille, for defendant.
And again, when Busey demanded collateral security from William Tyler, he had a right to infer that the bond belonged to him; and there is no doubt but that it was his own individual property, and he delivered it to Busey on his own account and to procure a discount for his own use. Busey had no knowledge of any understanding between the complainant and his brother, William Tyler, upon the subject of securing the payment of the note when discounted, nor did he know that their responsibility on the paper was different from what it appeared to be on its face. In view of these features of the testimony, the court could not see why William Tyler could not assign the bond, with the consent of Busey, to secure any other liability. It was equally for the benefit of William Tyler, whose property it was, and without any notice to Busey, at the time of such transfer, that the complainant was a surety or entitled to any other equity.
The decree is reversed and the bill dismissed.